# CHARLESTON.

### ·FULTON v. RAMSEY et als.

### Decided March 29, 1910.

1. APPEARANCE—*Service of Process—Waiver of Defects.*

     Though an appearance in a cause, for any purpose other than to take advantage of defective execution, or non-execution, of process, consitutes a waiver of deefcts in the service of process, the purpose of such appearance must bear some substantial relation to the cause. In other words, it must be a purpose within the cause, not merely collateral thereto.

2. SAME—*General Appearance.*

     A mere inquiry, as to whether a continuance can be taken, without waiver of service, or offer to move for a continuance, provided it can be done without such waiver, does not amount to a general appearance.

3. SAME.

     A general appearance must be express or arise by implication from the deefndant's seeking, taking or agreeing to some step or proceeding in the cause, beneficial to himself or detrimental to the plaintiff, other than one contesting the jurisdiction only.

Appeal from Circuit Court, Braxton County.

Action by Elwood D. Fulton against Joseph Ramsey, Jr., and others. Judgment for defendants, and plaintiff appeals.

                                                             *Affirmed.*

*W. E. Haymond,* for appellant.

*Morrison & Rider, Lawrence Greer, Appleton D. Palmer, Benj. A. Richmond,* and *F. C. Nicodemus, Jr.,* for appellees.

POFFENBARGER, JUDGE:

The sole question in this cause, namely, whether Joseph Ramsey, Jr., George J. Gould and William E. Guy, non-resident defendants, proceeded against by order of publication, appeared herein, in the court below, by attorneys, so as to enable that court to render a personal decree against them, grows out of the operations of what is styled in an agreement, and popularly known, as "The Little Kanawha Syndicate," which agree-

ment is dated Dec. 2, 1901, and was signed by said Ramsey, Gould, Guy and others.

That syndicate seems to have been formed for the purpose of purchasing the Little Kanawha Railroad, large areas of coal lands and other properties in this state, and extending said railroad eastward to Elkins, for connection with the West Virginia Central Railroad, owned by Mr. Gould and his associates, and westward so as to connect with the Wabash Railroad, also owned by them; all with the view of giving said last mentioned road an outlet to the Atlantic seaboard, developing the coal and timber lands along the connecting lines, and securing traffic for said railroad properties.

By the terms of that contract, Ramsey, Gould and Guy were made syndicate managers, with power to take the title to all syndicate property in their names and make binding contracts concerning the same, all other parties thereto being mere subscribers, without power of management or control.

In anticipation of the launching of this enterprise, Mr. Edward D. Fulton had acquired an option on the Little Kanawha Railroad as well as the title to, and options upon, large areas of coal and coal lands and other property in the counties of Braxton, Gilmer and Lewis. Under certain agreements, and with intent to dispose of the same to the syndicate, he assigned the option on the railroad, at the option price, and assigned his coal and coal land options and conveyed his coal and coal lands, at certain prices, named in the assignments and deeds, to the St. Louis Union Trust Company, to hold as trustee for the syndicate. For some reason, the syndicate concluded to abandon its plan and sell all its property. Accordingly, it failed to carry out its contemplated arrangements with Fulton, and he brought this suit, in the circuit court of Braxton county, to compel specific performance of his alleged contract with the syndicate, claiming the right to compel its managers to accept a conveyance of 17,256.19 acres of land and a large purchase money liability in his favor. An attachment was sued out on the ground of non-residence of the defendants and levied on the land, so conveyed to the St. Louis Union Trust Company.

On the first day of December, 1908, the following order, relied upon by Fulton as showing a general appearance was entered:

"This day R. W. McMichael and John B. Morrison attorneys practicing in this court, appeared and asked the court to permit them to appear specially for Joseph Ramsey, Jr., George J. Gould and William E. Guy, as managers of the Little Kanawha Syndicate, and ask a continuance of this cause for thirty or sixty days to enable them to prepare their defense, or to determine whether they would desire to appear generally, and stating that they did not desire to appear generally for said parties at this time, but that they desired to move the court to continue the cause without appearance other than specially for the purposes of the continuance. The plaintiff, by his counsel, resisted the said motion to continue the hearing, and thereupon said counsel for said defendants, Ramsey, Gould and Guy, announced that it was their desire to withdraw and not appear to the case, and thereupon counsel for plaintiff, and while said counsel for defendants were present, asked that the cause be submitted for hearing and accordingly the said cause was submitted for hearing."

On the next day, a decree was entered, reciting service of process upon certain defendants and orders of publication as to Ramsey, Gould, Guy and others, non-residents, and the order of attachment and orders of publication thereon. By it, the amount of the plaintiff's claim and the lands and other property were ascertained and it was ordered that, unless Ramsey, Gould and Guy, or some one for them, should pay the plaintiff the sum, $367,266.18, within sixty days, a special commissioner, appointed for the purpose, should sell all of the attached coal and coal lands, or enough thereof to pay said debt, interest and cost. This was not a personal decree. On the 18th day of March, 1909, the plaintiff again appeared and filed a deed, executed by himself and his wife, conveying the lands in question to the St. Louis Union Trust Company, as and for a tender of conveyance to the Little Kanawha Syndicate and its managers, and, deeming the order entered on the first day of December, 1908, sufficient to established submission of Ramsey, Gould and Guy to the jurisdiction of the court, by appearance, he asked a personal decree against them for the sum of $371,922.86, the amount formerly ascertained and interest thereon, and the court entered it. On the 18th day of May, 1909, said defendants filed a petition, praying vaca-

tion of this decree, as one entered upon a bill taken for confessed, which petition was accompanied by affidavits, showing that McMichael and Morrison had never been authorized to enter a general appearance for them and that said attorneys had had no intention of doing so. On reconsideration of the order of Dec. 1, 1908, the court set aside said decree of March 18, 1909, and, from this decree, Fulton has appealed.

No plea, demurrer or answer having been filed, nor any resitance made by the defendants to the entry of the decree, nor any facts introduced by them, not alleged in the bill, the decree of March 18, 1909, was, in fact and law, as well as by profession, a decree upon the bill taken for confessed, if there was an appearance; and the court could correct any error in it, upon motion, under section 5 of chapter 134 of the Code of 1906, notwithstanding the expiration of the term at which it had been entered. *Watson* v. *Wigginton,* 28 W. Va. 533; *Steenrod* v. *Railroad Co.,* 25 W. Va. 133; *Bock* v. *Bock,* 24 W. Va. 586; *Hunter* v. *Kennedy,* 20 W. Va. 343.

This being true, the inquiries are whether there was an appearance, in the cause, not merely in the court, for any purpose, and, if so, a general appearance, or one that must be deemed and regarded as a general appearance, notwithstanding the expressed desire that it be treated and held to be special, or one for a certain limited purpose and no other, and, if an appearance in the cause, whether it bound the defendants. The petition sought vacation of the decree upon the following grounds: (1) That the order entered on Dec. 1, 1908, does not show a general appearance; and (2) that the attorneys McMichael and Morrison had no authority to enter such an appearance. It is accompanied by affidavits, showing not only want of authority in the attorneys to enter the appearance, but also the details of the transaction of Dec. 1, 1908, substantially recorded in the order. Counter affidavits were filed by the plaintiff, somewhat variant as to these details, from the statements in the affidavits, filed by the defendant.

Under the impression that a false recital of appearance can be reached only by bill in equity or a similar proceeding, the court below disregarded the affidavits and dealt only with interpretation of the order, reaching the conclusion that it did not show an appearance in the cause. As we concur in that

conclusion, we deem it unnecessary to enter upon any inquiry as to whether the affidavits, in so far as they show details of the transaction of Dec. 1, 1908, not entered upon the record, might have been considered. If the recitals of the order can be contradicted or added to, we suggest, but do not decide, that a motion, under section 1 of chapter 134 of the Code of 1906, might be as available as a bill in equity. If such an error is one of fact, correction thereof is within the letter and spirit of said section, and the remedy there given has been successfully invoked and suggested, under somewhat similar circumstances. *Carlon's Adm'r* v. *Ruffner*, 12 W. Va. 297; *Watt* v. *Brookover*, 35 W. Va. 323; *Lumber Co.* v. *Lance & Co.*, 50 W. Va. 636; *Gunn* v. *Turner's Adm'r*, 21 Grat. 382; 4 Min. Ins. 848; 2 Tuck. Com. 328; Powell App. Pro., section 116.

We think the order was nothing more than an inquiry, addressed to the court, for information as to what could be done by way of obtaining a postponement of action in the cause, without submitting to the jurisdiction of the court for all purposes, or a conditional, not an absolute and unqualified, motion for a continuance. The motion, as recorded, if it can be regarded as a motion, signified a desire for a continuance, if it could be had without a waiver of service of process upon the defendants, but distinctly declared unwillingness to ask or take a continuance, if it involved such a waiver. It does not say in express terms that a motion to continue was made. On the contrary, it says McMichael and Morrison asked the court to permit them to appear specially for their clients and ask a continuance, to enable them to determine whether they would desire to appear generally, and stated that they did not desire to appear generally at that time. It then says counsel for plaintiff resisted "said motion to continue." That means the motion or request made. It was not in terms a motion, and, read in the light of the protest, submitted along with it, it cannot be regarded as anything more, in substance and effect than an offer to move for a continuance, if it could be done without waiving process, accompanied by a declaration of intent not to move at all, if such action involved waiver, and an immediate declaration of determination not to say or do anything more, after having been informed that a motion

for a continuance, so made and described upon the record, would be in law a submission to the jurisdiction of the court.

We apprehend no dissent from the proposition that the establishment of the jurisdiction of a court, whether over the person or the subject matter, must be affirmatively shown by the record. *Bryant* v. *Groves,* 42 W. Va., 587, 600. Something must be done to confer it. Jurisdiction of the person may be acquired by implication arising out of some act done, or by direct and positive acknowledgment thereof; but, in either event, it should clearly appear. It ought to be reasonably free from uncertainty and doubt. A favorite statement of the rule, respecting the acquisition of jurisdiction by implication or waiver, is this: "By appearance to the action in any case, for any other purpose than to take advantage of the defective execution, or non-execution, of process, a defendant places himself precisely in the situation in which he would be, if process were executed upon him, and he thereby waives all objection to the defective execution or non-execution of process upon him." *State* v. *Coal Co.,* 49 W. Va. 143. *Lumber Co.* v. *Lance,* 50 W. Va. 640; *Layne* v *Railroad Co.,* 35 W. Va. 438; *Blankenship* v. *Railway Co.,* 43 W. Va. 135; *Mahany* v. *Kephart,* 15 W. Va. 609; *Bank* v. *Bank,* 3 W. Va. 386. This is a declaration of a general principle, to be read in the light of the facts and circumstances under which it is applied, in seeking its true meaning. Some attention must also be paid to its terms. It must be an appearance for a purpose in the cause, not one merely collateral to it. In this state, litigants have put themselves within this rule, for the most part, by asking or accepting some sort of relief in the cause, consistent with the hypothesis of a submission and inconsistent with any other view, such as a continuance. No instance can be found in which a party has been held to have impliedly bound himself to submission, without having asked or received some relief in the cause or participated in some step taken therein. Mere presence in the court room, when the case is called, or examination of the papers in it, filed in the clerk's office, is not enough. Nor could a conversation, with plaintiff's counsel or the judge of the court, about the case be regarded as an appearance. No decision goes that far. Under this text in 3 Cyc. 504: "Any action on the part of defendant, except to object to the juris-

diction, which recognizes the case as in court, will amount to a general appearance," a long list of decisions is cited, but, in every one of them, something was done in the cause,—some affirmative act was done to delay, speed or defend the cause. In every instance the conduct, deemed a waiver, amounted to more than a mere inquiry or conversation about it. The test, according to a late decision of the federal supreme court, *Merchant's Heat & Light Co.* v. *Clow & Sons,* 204 U. S. 286, is whether the defendant became an actor in the cause. The instances of the assumption of the role of actor in a suit, disclosed by the federal decisions, are such as the taking of a continuance; filing a demurrer to plaintiff's pleadings, without limiting it to the question of jurisdiction; filing a plea of intervention; pleading to issue or to the merits in the first instance; or filing sets-off, counter-claims or notices of recoupment Broad as is this doctrine of waiver, it does not cover all acts done by a defendant. He may talk even to the court about the merits of the cause without subjecting himself to it. In *Citizens Saving & Trust Co.* v. *Railroad Co.,* 205 U. S. 46, argument upon the merits of the cause was indulged in, at the hearing upon the sufficiency of the pleas to the jurisdiction, and this was relied upon as constituting a general appearance; but Mr. Justice Harlan, speaking for the Court, said: "This is too harsh an interpretation of what occurred in the court below. There was no motion for the dismissal of the bill for want of equity. The discussion of the merits was permitted or invited by the court in order that it might be informed on that question in the event it concluded to consider the merits along with the question of the sufficiency of the pleas to the jurisdiction. We are satisfied that the defendants did not intend to waive the benefit of their qualified appearance at the time of filing the pleas to the jurisdiction." In *Pendleton* v. *Russell,* 144 U. S. 640, a receiver of a dissolved life insurance company appeared in the Supreme Court of the United States and prosecuted a writ of error to obtain a release of property, pledged to indemnify the sureties in a *supersedeas* bond, given upon a writ of error to a judgment against the company. That judgment was reversed and the case remanded to the circuit court, where, without summoning the receiver and without any appearance by him, another judgment was recovered in the action,

which was filed as a claim against the assets of the company in the hands of the receiver and disallowed, on the ground that the court which rendered it had no jurisdiction of the receiver. From this judgment of disallowance, an appeal was taken to the Supreme Court of the United States, and it was there held that the prosecution of the writ of error by the receiver and the remanding of the case, at his instance, did not give the court below jurisdiction over him, and that the judgment did not bind the assets in his hands. In *Fairbank & Co.* v. *Cincinnati &c. Ry. Co.*, 54 Fed. Rep. 420, the court held as follows: "Where a defendant appears specially for the purpose of moving to quash the return on the summons, the fact that, in such motion, it also prays judgment whether it should be compelled to plead, for the reason that it is a non-resident corporation, does not constitute a waiver of the objection to the service." ( These precedents amply sustain the view that something substantially beneficial to the defendant or detrimental to the plaintiff, relating to or affecting the progress of the cause, asked, done or accepted by the former, is essential to the establishment of a waiver of process or service thereof. There must be something more than a mere pretext for the claim of jurisdiction over him.) He must either enter an appearance, ask some relief in the cause, accept some benefit as a step therein or do something from which the necessary implication of submission to the jurisdiction of the court over his person arises. "The principle to be extracted from the decisions on the subject as to when a special appearance is converted into a general one, is, that where the defendant appears and asks some relief which can only be granted on the hypothesis that the court has jurisdiction of the cause and the person, it is a submission to the jurisdiction of the court as completely as if he had been regularly served with process, whether such an appearance, by its terms, be limited to a special purpose or not." 2 Ency. Pl. & Pr. 625. "The expression 'for any purpose connected with the cause,' however, is not to be taken as wholly unrestricted in meaning. The appearance must have some relation to the merits of the controversy, and the purpose must be to invoke some action on the part of the court having direct bearing in some way upon the question of the judgment or decree proper to be entered." *Bank* v. *Knox*, 133 Ia. 443, 446.

The general principle, upon which we rely, was applied by the supreme court of Massachusetts in *Lowrie* v. *Castle,* 198 Mass. 82, under circumstances even more unfavorable to the defendant than those presented here. The non-resident defendant in that case, within ten days after the return day of the writ, applied to the court for an extension of the time within which he could appear, in order that he might decide whether to waive the lack of proper service and voluntarily appear, or to insist upon his rights as a non-resident, and the court allowed such extension. After the expiration of the ten days, but within the period of the extension allowed, he moved to dismiss the action, stating in his motion that he appeared only for the purpose of moving a dismissal, and the motion was sustained. The appellate court held it to be within the inherent power of the trial court to grant such an extension, without prejudice to the right to except to the jurisdiction, and affirmed the judgment of dismissal. In delivering the opinion of the court, Hammond, Judge, said: "It is to be borne in mind that this is not a case where a defendant, upon whom process has been duly served and who therefore is within the jurisdiction of the court and liable to default if he does not seasonably appear, asks for delay. It is a case where a non-resident defendant who for lack of service upon him is not within the jurisdiction and cannot be brought within it, fearing lest the court may regard the service sufficient and default him, comes into court and says in substance that he is in doubt whether to waive proper service and voluntarily appear, or to insist upon his rights as a nonresident, and ask for time to decide. Certainly it is a part of the inherent power in a court to set a time within which the non-resident must make up his mind and act accordingly. And that was all the court did. The motions for dismissal were properly before the court." Against this express decision of a reputable and able court, under a state of facts less favorable to the defendant than those presented here, and other decisions, showing that something substantial must be asked or done by the defendant, relating to or affecting the merits of the cause, we have nothing but a generalization, founded upon, and, therefore, to be interpreted by, facts, falling far short of those disclosed here, for the proposition that a mere offer by a defendant to move for a continuance, provided it can be done without a

waiver of service, accompanied by his declaration of intention not to appear generally nor to ask or take such continuance, if it involved such waiver, and signification of his desire and determination to withdraw the request, for nothing but a request had been made, on being informed that such a motion would be a general appearance, is bound thereby. We feel amply justified, upon authority, as well as upon reason and principle, in withholding our assent to it, and saying such action did not constitute a general appearance. If we could notice the fact, shown by the affidavits, but not by the order, that the court, with the assent of counsel for the plaintiff agreed to take the request under advisement until the next morning, it would not alter our conclusion. That did not make it a motion for a continuance, nor constitute a continuance. It was only an agreement to further consider the conditional offer to move for a continuance.

In view of this conclusion, power to inquire whether Mc-Michael and Morrison had authority to enter a general appearance, and whether the decree could be avoided for lack thereof, by motion or otherwise, becomes an immaterial question, and we refrain from discussion thereof.

Perceiving no error in the decree appealed from, we affirm it.

*Affirmed.*

BRANNON, JUDGE, *(dissenting):*

The plain real construction of the record is, that Ramsey, Gould and Guy asked a continuance, and thus appeared; but say that this is going too far. Then, we can say by the very letter of the record that they "appeared and asked the court to permit them to appear specially and ask a continuance of this cause for thirty or sixty days to enable them to prepare their defense, or to determine whether they would desire to appear generally, and stating that they did not desire to appear generally for said parties at this time, but that they desired to move the court to continue the cause without appearance other than specially for the purposes of the continuance". Another part of the record says, that one of their counsel "proceeded to argue at some length the right to such continuance

and appearance, and did move the court for leave to so appear specially and continue the case." When counsel for those parties argued for right to make such special appearance, the plaintiff resisted any continuance and asked that the case be submitted for decree, and counsel for Ramsey, Gould and Guy then asked time "until next morning to determine what course they would pursue, the court not having acted upon the motion aforesaid; and counsel for plaintiff assented to said request, the court saying nothing, but tacitly assenting thereto; and later on the same day, within about half an hour, and before the court had taken any action, said Morrison, of counsel for said defendants, returned into court, and stated that they desire to withdraw and not appear in the case", and in the presence of Morrison the plaintiff submitted the case for decree. What is this in plain intent but a motion to continue? It was either an appearance or not one; and if any appearance, what but a motion for continuance? But say that is going too far. Then it was a motion, not denying jurisdiction, but recognizing a case in court, and asking relief; that is, asking from the court an order in the case giving leave to appear specially; and if such order be made, then to ask actual continuance. If leave had been granted, and a continuance had for sixty days, it would have been a general appearance. What difference that leave was not given? They moved for an order in the case, not denying the presence of a case or the jurisdiction or its power to make orders and decrees, but admitting that power. I will not argue in my own language that this is an appearance justifying a decree, but will cite authorities to sustain this position.

"If a party appear in a suit for any purpose other than to object to the legality of process or its service, it is a general, not a special, appearance, and dispenses with service of process". *Frank* v. *Zeigler,* 46 W. Va. 614.

"Procuring or Consenting to a Continuance.—Procuring a continuance of a cause operates a general appearance; and likewise an application by motion, or otherwise, for a continuance, is a general appearance". 2 Ency. Pl. & Prac. 633; *Layne* v. *Railroad Co.,* 35 W. Va. 438.

"An appearance by attorney, so as to secure an extension of the time to plead or answer, is a general appearance, and de-

fendants cannot thereafter have their appearance taken as special to plead to the jurisdiction". *Briggs* v. *Stroud,* 58 Fed. Rep. 717.

"A defendant is also considered to have made a general appearance when he applies for or obtains leave to answer, or when he applies for or obtains an extension of time to answer". Cyc. 507.

"The appearance by a party who asks a postponement until his attorney could arrive is a general appearance, although the attorney, when he arrives, moves to quash the service as insufficient". *Epps* v. *Sasby,* 43 Ark. 545.

Justice Brewer said that the mere fact that a party proclaims or declares that his appearance is special does not make it so or convert what in law is a general appearance into a special appearance. *Burdett* v. *Corgan,* 26 Kan. 102. Also *Kawvalley Life Co.* v. *Lamke,* 19 Pac. 337. So *Grantier* v. *Rosecrance,* 27 Wis. 488. The nature of the appearance of this case makes it a general appearance.

"It is imperative that a party must occupy no ambiguous position. A party must either appear at trial and abide the consequences, or not appear. He cannot occupy an uncertain status, partly appearing and partly not appearing". 2 Ency. Pl. & Prac. 593.

In the same volume on page 625 we find this:

"The principle to be extracted from the decisions on the subject as to when a special appearance is converted into a general one, is, that where the defendant appears and asks some relief which can only be granted on the hypothesis that the court has jurisdiction of the cause and the person, it is a submission to the jurisdiction of the court as completely as if he had been regularly served with process, whether such an appearance, by its terms, be limited to a special purpose or not. Where a party appears in court and objects by motion to the jurisdiction of the court over his person, he must state specially the grounds of objection; by not so stating them his appearance will be construed a general one, although he moves to dismiss on that ground". Supported by *Belknap* v. *Charlton,* 34 Pac. R. 758, and *Blackburn* v. *Sweet,* 38 Wis. 578. Here I ask how could the court make the order asked by the defendant if it had no

jurisdiction, if there was no case? How could it do so except upon the hypothesis that the court had jurisdiction of the cause and person?

"I think a defendant may appear specially to object to the jurisdiction of the court, either over his person or the subject matter of the suit, without waiving his right to be heard on the question in bank. But if, by motion or by other form of application to the court, he seeks to bring its power into action, except on the question of jurisdiction, he will be deemed to have appeared generally. Such application concedes a cause over which the court has power to act". *Porter* v. *Chicago etc. R. Co.,* 1 Neb. 15.

"The rule is this: If the defendant does anything, or takes any step in the case which can be fairly construed into an admission that the case is properly in court, he will be held to have waived not only defects in the process, but the process itself". *Cropsey* v. *Wiggenhorn,* 3 Neb. 108. So in *McKillip* v. *Harvey,* 114 N. W. 155.

"Acts Recognizing Case as in Court. In General. Any action on the part of defendant, except to object to the jurisdiction, which recognizes the case as in court will amount to a general appearance". 3 Cyc. 504.

Any action recognizing case in court is a general appearance. *Lampley* v. *Beaver,* 25 Ala. 534.

Appearance for any other purpose than to question jurisdiction. 2 Ency. Pl. & Prac. 632 and 621; *Zobel* v. *Zobel,* 90 Pac. 191.

"If jurisdiction is essential to the granting of the relief sought, the appearance is general, regardless of the purpose or character of the appearance". *Winter* v. *Union P. Co.,* 93 Pac. 331.

"In order to object to the jurisdiction of the court, either over the person or the subject matter, a special appearance may be made, but if the appearance is for any other purpose, it will be considered general. An application for a continuance, is an appearance, and waives defects in the service of process". *Ulmer* v. *Haitt,* 4 G. Green (Iowa) 439. An apt rule is this given in *Low* v. *Stringham,* 14 Wis. p. 225.

"If a party wishes to insist upon the objection that he is not

in court, he must keep out for all purposes except to make that objection. *Canhey* v. *Vance,* 3 Chand. 315-16; *Thayer* v. *Dove,* 8 Blackford, 567". Likewise *Security Co.* v. *Boston,* (Cal.) 58 Pac. 942. The parties withdrew their appearance. How could they, if there had been none? But they had no consent of the court to withdraw. This is necessary. *U. S.* v. *Curry,* 6 Howard 106. After such withdrawal, the appearance is not destroyed, but is still good for judgment. *Eldrek* v. *Bank,* 17 Wallace 546; *Grand* v. *Gildersleave,* 174 U. S. 603; *Creighton* v. *Kerr,* 20 Wallace p. 13.

By chance I meet two cases bearing on the subject. In *Yale* v. *Edgerton,* 11 Minn. 271, the defendant appearing specially made a motion to set aside the summons and later the amended summons, etc. These motions were both submitted to the court, and while under advisement, the time to answer being about to expire, the defendant obtained an order extending the time to answer, stating that he appeared specially. The court said: "To extend the time to answer is a favor which can only be granted in an action. And to ask a favor, an extension of time to answer on the merits, is a submission to the jurisdiction of the court. There is no protest in the act itself against the jurisdiction, as in a special appearance to vacate the summons".

In *Mulhevan* v. *Press Co.,* 24 N. J. 150, was a motion to dismiss for want of service of process, and later time was given to demur or plead. The court held this grant of time to plead or demur was not a general appearance; and said that if the motion for extension of time had been first made, it would have been an appearance. Remember that in our case, there was no exception in any form to jurisdiction or denial that there was a suit in court.

WILLIAMS, JUDGE, dissents and concurs in this opinion.