# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: A.N.**

**No. 15-0182** (Mingo County 13-JA-89)

**FILED**

September 30, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.D. ("petitioner"), by counsel Jonathan W. Jewell, appeals the Circuit Court of Mingo County's February 9, 2015, order terminating his parental rights to two-year-old A.N. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Lauren Thompson, submitted a response.[1] On appeal, petitioner argues that the circuit court erred in terminating his parental rights to the child in violation of his due process and statutory rights to notice and a meaningful opportunity to be heard.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2013, A.N. was born prematurely and remained hospitalized until September of 2013. The DHHR received a referral prior to A.N.'s and her mother's release from the hospital alleging that A.N.'s mother intended to take the child to live in a home with no electricity, heat, running water, or motor vehicle access. A.N.'s mother then changed her plans twice prior to leaving the hospital. She first stated her intention to take the child to a motel near Charleston, West Virginia. Shortly thereafter, she stated her intention to take the child to her aunt's one-room trailer in Dingess, West Virginia. A.N.'s mother agreed to permit a Child Protective Services ("CPS") worker to conduct a walk-through of the aunt's home. The CPS

---

[1]The guardian incorrectly titled her response a "Reply Brief." We refer the guardian to Rules 10(d), 10(e), 10(g), 11(h), and 11(j) of the West Virginia Rules of Appellate Procedure (requiring a guardian in abuse and neglect proceedings to file either a respondent's brief or summary response.).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

worker found that the aunt's home was adequate but expressed her concerns that A.N. had no crib or food assistance at that time. CPS also found that A.N.'s mother was on probation for grand larceny and was court-ordered to have no contact with petitioner.

In September of 2013, A.N.'s mother relocated with the child to another house, which reportedly met "minimal standards" for child safety, according to CPS, but lacked regular heating, forcing A.N.'s mother to use a stove and multiple electric space heaters in order to provide heat to A.N.'s room. According to the DHHR, CPS directed A.N.'s mother to correct the heating issue, but she failed to do so before CPS's inspection in October of 2013.

In November of 2013, CPS and A.N.'s mother agreed to an in-home safety plan to correct the inadequacies of her housing. During a CPS visit in that month, A.N.'s mother was not at her residence. A friend of A.N.'s mother informed the CPS worker that A.N.'s mother continued to associate with petitioner in violation of her probation and that A.N.'s mother was "staying out all night long." Due to her association with petitioner, A.N.'s mother's probation was revoked and she was incarcerated, leaving the child without a caretaker. Thereafter, CPS took custody of A.N. and filed the instant abuse and neglect action. The DHHR named petitioner as a putative respondent father in that abuse and neglect petition, but at the time of the petition's filing his paternity had not yet been established. The circuit court granted temporary custody of the child to DHHR and appointed counsel for the parents and the child.

In December of 2013, the circuit court held a preliminary hearing. Petitioner was not present, but his court-appointed counsel argued that he had not been served with notice of the abuse and neglect petition. The circuit court found imminent danger to the child, and it set the matter for adjudication. The circuit court also ordered that petitioner be given a paternity test and that both parents participate in services recommended by the multi-disciplinary team ("MDT"). In mid-December of 2013, petitioner submitted to the court-ordered DNA testing to determine whether he was the child's father. The DNA testing established that petitioner is the child's biological father.

In January of 2014, the circuit court held a hearing to review this matter. Petitioner was not present at this hearing, but he again appeared by counsel. Prior to this hearing, petitioner had moved in writing for an improvement period, and, at that hearing, the circuit court granted both parents pre-adjudicatory improvement periods. The MDT later met to determine issues such as child visitation and parental services for both parents. Petitioner was also not present at this meeting.

On two occasions, in February and March of 2014, petitioner tested positive for marijuana. In late March of 2014, petitioner's service provider noted that petitioner appeared to be under the influence of drugs during his services. She described him as "hyper and overly happy" She further reported that four other people were in the home with candles burning (apparently in order to mask a smell in the home) and with an open box of sandwich bags (apparently often used to contain drugs) on the television. The service provider relayed her belief that these conditions were signs of petitioner's drug use. That same month, March of 2014, A.N.'s mother filed a petition for a domestic violence emergency protective order against petitioner for allegedly striking her in the face, pulling her hair, and sticking a needle in her arm.

In November of 2014, the circuit court held a status hearing on petitioner's pre-adjudicatory improvement period.[3] Petitioner did not attend that hearing in person but was represented by counsel. At that hearing, the DHHR proffered that petitioner's whereabouts were unknown at that time. The DHHR also claimed that petitioner failed to keep in contact with the DHHR as required by the terms of his improvement period. Based on the circumstances of this case, the circuit court set the matter for an adjudicatory hearing.

In December of 2014, the circuit court held the adjudicatory hearing. Petitioner was again not present in person, and his counsel moved for a continuance due to his absence. The circuit court denied that motion. The circuit court further took judicial notice of all prior testimony and evidence and heard additional evidence that petitioner failed to maintain contact with the DHHR, failed to attend all visits with the child, and failed to complete a psychological evaluation as ordered. Ultimately, the circuit court found that petitioner had abused and neglected A.N. and had failed to meaningfully participate in the services provided to him.

In February of 2015, the circuit court held a dispositional hearing. Petitioner was again not present in person, but he was represented by counsel.[4] Based on the evidence that petitioner had not complied with services and had failed to participate in services following the filing of the domestic violence petition in March of 2014, the circuit court terminated his parental rights to A.N. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]In January of 2014, the circuit court granted petitioner a three-month, pre-adjudicatory improvement period pursuant to West Virginia Code §§ 49-6-2(b) and 49-6-12(a) and Rule 23(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. By the circuit court's review hearing in November of 2014, petitioner's pre-adjudicatory improvement period had expired.

[4]In his brief to this Court, petitioner claims that he was arrested and incarcerated in February of 2015 prior to the circuit court's dispositional hearing.

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in holding (1) the preliminary hearing in violation of West Virginia Code § 49-6-1(b)'s notice requirements; (2) the adjudicatory hearing when petitioner was absent and when his attorney moved for a continuance due to his absence; and (3) the dispositional hearing when petitioner was absent, allegedly due to his arrest and subsequent incarceration shortly before that hearing.

With regard to the preliminary hearing held in this matter, petitioner contends that the DHHR and circuit court violated West Virginia Code § 49-6-1(b), which provides as follows:

> [t]he petition and notice of the hearing shall be served upon both parents . . . . In cases wherein personal service within West Virginia cannot be obtained after due diligence upon any parent or other custodian, a copy of the petition and notice of the hearing shall be mailed to the person by certified mail, addressee only, return receipt requested, to the last known address of such person. If the person signs the certificate, service shall be complete and the certificate shall be filed as proof of the service with the clerk of the circuit court. If service cannot be obtained by personal service or by certified mail, notice shall be by publication as a Class II legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this code. A notice of hearing shall specify the time and place of the hearing, the right to counsel of the child and parents or other custodians at every stage of the proceedings and the fact that the proceedings can result in the permanent termination of the parental rights. Failure to object to defects in the petition and notice shall not be construed as a waiver.

Petitioner maintains that he did not receive a copy of the abuse and neglect petition prior to the preliminary hearing, and, therefore, the circuit court violated his rights to notice when it held that hearing in his absence. Following our review of the arguments, the appendix record, and pertinent legal authority, the Court finds no error in the circuit court holding the preliminary hearing in this matter without petitioner first having personally received a copy of the underlying abuse and neglect petition. "A court acquires personal jurisdiction over a defendant only by service of its process upon him summoning him to appear, or by his voluntary general appearance in the absence of service." *Patton v. Eicher*, 85 W.Va. 465, 102 S.E. 124, 126 (1920). "A 'general appearance' must be express or arise by implication from the defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff, other than one contesting the jurisdiction only." Syl. Pt. 3, *Fulton v. Ramsey*, 67 W.Va. 321, 68 S.E. 381 (1910). The record is clear that petitioner made a general appearance in the underlying proceedings. Petitioner filed a motion for an improvement period, was granted a pre-adjudicatory improvement period, and submitted to certain services and testing as ordered by the circuit court during the pendency of the proceedings below. Moreover, under the limited circumstances of this case, any potential error in this regard is clearly harmless given the circuit court's order granting petitioner's motion for a pre-adjudicatory improvement period. Based on petitioner's voluntary general appearance in the proceedings below, we find no merit to petitioner's argument.

Petitioner next contends that the circuit court erred in holding the adjudicatory hearing in his absence and in denying his attorney's motions for continuances due to his absence. While petitioner argues that the circuit court should have granted his motions for continuances, he correctly notes that the decision to grant or deny a motion for a continuance in an abuse and neglect proceeding "is a matter left to the discretion of the circuit court." *In re Tiffany Marie S.*, 196 W.Va. 223, 235, 470 S.E.2d 177, 189 (1996). We have also often explained that "'the best interests of the child is the polar star by which decisions must be made which affect children.' *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989)." *Kristopher O. v. Mazzone*, 227 W.Va. 184, 192, 706 S.E.2d 381, 389 (2011). Based on the record before us, it is unclear why petitioner was absent from the adjudicatory hearing, which was held after he had availed himself of the circuit court's jurisdiction and had participated, at least in limited part, in his pre-adjudicatory improvement period. Petitioner failed to indicate the reasons for such a continuance apart from his general absence from the adjudicatory hearing. Given petitioner's failure to comply with services during his improvement period and the child's need to achieve permanency in these proceedings, we find no abuse of discretion in the circuit court's decision to move forward and deny petitioner's motions for continuances at the time of the adjudicatory hearing.

Finally, to the extent petitioner argues that the circuit court erred in holding a dispositional hearing in his absence when that absence was due to his arrest and incarceration shortly before the hearing, we find no evidence of his arrest or incarceration in the record before this Court. Moreover, regardless of his arrest and incarceration prior to the dispositional hearing, we have explained the following:

> 2. "Whether an incarcerated parent may attend a dispositional hearing addressing the possible termination of his or her parental rights is a matter committed to the sound discretion of the circuit court." Syllabus point 10, *State ex rel. Jeanette H. v. Pancake*, 207 W.Va. 154, 529 S.E.2d 865 (2000).

> 3. "In exercising its discretion to decide whether to permit an incarcerated parent to attend a dispositional hearing addressing the possible termination of his or her parental rights, regardless of the location of the institution wherein the parent is confined, the circuit court should balance the following factors: (1) the delay resulting from parental attendance; (2) the need for an early determination of the matter; (3) the elapsed time during which the proceeding has been pending before the circuit court; (4) the best interests of the child(ren) in reference to the parent's physical attendance at the termination hearing; (5) the reasonable availability of the parent's testimony through a means other than his or her attendance at the hearing; (6) the interests of the incarcerated parent in presenting his or her testimony in person rather than by alternate means; (7) the affect of the parent's presence and personal participation in the proceedings upon the probability of his or her ultimate success on the merits; (8) the cost and inconvenience of transporting a parent from his or her place of incarceration to the courtroom; (9) any potential danger or security risk which may accompany the incarcerated parent's transportation to or presence at the proceedings; (10) the

5

inconvenience or detriment to parties or witnesses; and (11) any other relevant factors." Syllabus point 11, *State ex rel. Jeanette H. v. Pancake*, 207 W.Va. 154, 529 S.E.2d 865 (2000).

       4. In order to activate the procedural protections enunciated in Syllabus points 10 and 11 of *State ex rel. Jeanette H. v. Pancake*, 207 W.Va. 154, 529 S.E.2d 865 (2000), an incarcerated parent who is a respondent to an abuse and neglect proceeding must inform the circuit court in which such case is pending that he/she is incarcerated and request the court's permission to attend the hearing(s) scheduled therein. Once the circuit court has been so notified, by the respondent parent individually or by the respondent parent's counsel, the determination of whether to permit the incarcerated parent to attend such hearing(s) rests in the court's sound discretion.

Syl. Pts. 2, 3, and 4, *In re Stephen Tyler R.*, 213 W.Va. 725, 584 S.E.2d 581 (2003). Following a thorough review of the record on appeal, we find that the circuit court committed no error in proceeding to disposition where petitioner failed to follow the procedures set forth in *In re Stephen Tyler R.* While petitioner argues that his arrest and incarceration resulted in insufficient time to follow those procedures, we find no support in the record for such a conclusion nor do we find the need in this case, based on the record before us, to deviate from our prior holding on an incarcerated parent's ability to be present for a dispositional hearing. However, we again note that, had petitioner followed the procedures explained above, the circuit court retained the discretion to hold a dispositional hearing in his absence under the circumstances presented in this matter. For these reasons, under the limited circumstances of this case, the Court finds no reversible error in these proceedings.

       For the foregoing reasons, we find no error in the circuit court's February 9, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: September 30, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6