## JEWETT *v.* GARRETT *et al.*

*(Circuit Court, D. New Jersey. September 22, 1891.)*

1. **WRITS—ISSUE AND VALIDITY—DRAFT BY PLAINTIFF'S ATTORNEY.**
    Where a writ of summons issuing out of the United States circuit court is under the seal of the court, and signed by the clerk, as required by Rev. St. U. S. § 911, it is no objection to its validity that it is wholly in the handwriting of plaintiff's attorney, excepting the signature of the clerk.
2. **SAME—ISSUE IN BLANK.**
    Nor does it affect the validity of such writ that the blank form of it, duly signed and sealed, was delivered by the clerk to plaintiff's attorney, and by him filled in with names of parties, style of action, and proper date, when he was prepared to use it.
3. **SAME—INDORSEMENT BY ATTORNEY—AMENDMENT.**
    It is no ground for quashing such writ that it is not indorsed by the name of an attorney of the court issuing it, as it is within the power of the court to amend it by allowing the substitution of the name of one of its attorneys for that appearing on the writ, or by admitting the attorney who has indorsed the writ to practice in such court.
4. **UNITED STATES MARSHALS—APPOINTMENT OF SPECIAL DEPUTIES.**
    The appointment of a special deputy-marshal to serve a summons is not invalidated by the fact that the marshal delivered a blank form for such appointment, duly signed, to plaintiff's attorney, who inserted his own name therein as such deputy.
5. **WRITS—SERVICE OF SUMMONS ON NON-RESIDENT.**
    Under the judiciary act of 1887, as amended by the act of 1888, which provides that, where the only ground for the jurisdiction of the federal courts is the citizenship of the parties, the defendant may be sued in the district of plaintiff's residence, service on defendant in that district is sufficient, though made while he was passing from a ferry-boat to a railroad train, *en route* to his home in another state, with no intention of remaining in the district; such service being sufficient according to the practice of the state courts therein, which the federal court follows.

At Law. Upon motions to vacate service of writ upon the defendant Robert Garrett, and to quash the writ.

*A. Q. Keasbey*, for the motions.

*S. D. Oliphant, Jr.*, and *George M. Robeson*, opposed.

GREEN, J. The facts upon which these motions are based are these: In December, 1890, Mr. Bower, an attorney residing and practicing in the city of New York, and who had been duly admitted to ·practice in this court, desiring to commence an action at law at the suit of the plaintiff, William Cornell Jewett, a resident of the state of New Jersey, against the defendants, Robert Garrett, William F. Frick, and Ferdinand C. Latrobe, residents of the state of Maryland, applied to the clerk of this court for a writ of summons, according to the practice which obtains in this circuit. At the same time he requested the clerk to obtain from the marshal of the district a proper and formal appointment of a special deputy or bailiff, to whom the service of the writ might be intrusted. In response to these requests the clerk immediately sent to Mr. Bower a writ of summons, sealed with the seal of this court, and properly signed by him, but without having inserted in it the names of the parties plaintiff and defendant, and without containing any statement of the cause, or the technical name of the action which the plaintiff intended to institute. The clerk also procured from the marshal of this district, as requested, a form used by him in deputizing a special bailiff or officer to make service of writs of summons, or other process, in which the name of the person to be authorized to serve this writ was not stated, but the deputation was officially signed by the marshal. These two papers were sent to Mr. Bower, as he had requested. Upon their receipt, Mr. Bower, or his partner, a Mr. Graeffe, tested the writ December 12, 1890, inserted the names of the plaintiff and defendant in their proper place, stated in exact terms the style of action brought, and made the writ returnable on the fourth Monday of March, 1891. Mr. Bower's name was inserted in the form of the appointment of special deputy, and he immediately proceeded to make the service of the writ, as he was therein empowered. The service which he made appears in the return thereof, annexed to the writ. It is as follows:

"I served the within writ on the defendant Robert Garrett on the 13th day of Dec., A. D. 1890, at Jersey City, in the dist. of New Jersey, by delivering to and leaving with him the copy thereof, and at the same time showing him the original, with the seal of the court attached, and informing him of the contents.

"W. BUDD DEACON, U. S. Marshal.
"By SAMUEL W. BOWER, Special Deputy Marshal."

This service was in fact made upon Mr. Garrett in the station of the Central Railroad of New Jersey, in Jersey City, as he was entering a car to proceed to his residence in Baltimore, Md. He had for that purpose left his hotel in New York city only a short time previously, and, crossing the Central ferry over the North river, had proceeded directly to the railroad station, where the train which he was to take was awaiting him. When the service of the writ was made upon him, Mr. Garrett had been

in the state of New Jersey, and within the territorial jurisdiction of this court, only a very few minutes. His admitted purpose was to pass through the state, via the Central Railroad of New Jersey, and its connecting railways, to Baltimore, in the state of Maryland, the point of his destination, having no thought or intention of remaining within the borders of New Jersey a longer time than would be necessarily consumed in making the transit. The other defendants have not been served with process, and no appearance has been entered for them in this suit.

It is now urged by counsel for Mr. Garrett that under these circumstances the writ of summons should be declared to be void, and that the pretended service should be held invalid. So far as the validity of the writ itself is concerned, the contention is that it should be declared void, and of no effect, because it was when issued by the clerk not a process of this court, but simply a blank paper, to which the signature of the clerk and the seal of the court had been attached; that, although in form a writ of summons, in effect it did not summon any one into court to answer any complaint of any one in any named action, or to the damage of any one, and hence could be of no effect or force. The statute governing the issue of writs and process from the courts of the United States requires that such writs and process shall be under the seal of the court, and shall be signed by the clerk thereof, (Rev. St. U. S. § 911;) and there is a further requirement that all process must bear teste from the day of its issue, (Id. § 912.) Other than in these necessary particulars, neither the form of the writ or process, nor its contents, nor the manner nor method of its delivery to the marshal for service, nor its formal drafting, is sought to be controlled or affected by any legislation of congress, further than to ordain generally that the writ shall, as to those particulars, as far as possible, harmonize with, and be similar to, the writs and processes obtaining under the Code of Procedure of the state in which the court has jurisdiction. There is no limitation of power to draft a writ of summons to the clerks of the federal courts. Any suitor desiring to do so may draft his own writ; and, if any suitor is so enabled, it follows that the duly-authorized attorney of such suitor may do the like. To give to such a drafted paper, in form a writ, efficient power to compel the appearance 'in the forum chosen' of the defendant named in it, it must be dignified by the seal of the court, and attested by the signature of the clerk. These added to the drafted form transform the invalid paper into a vitalized writ of the court. The only official acts of the clerk as to process required by statute are the affixing of the seal of the court and the signing of the writ itself. If he were requested by a suitor to prepare the whole writ, from the mandatory clause to the teste, he could lawfully and properly refuse to comply, and the law would justify him in such refusal. It is no part of his duty as clerk to act as scrivener for plaintiffs. It is obvious, therefore, that the objection lodged against this writ, to the effect that it was wholly in the handwriting of the plaintiff's attorney, except the signature of the clerk, can have no force.

But it is further insisted that, admitting the power of the suitor or his attorney to draft the writ, it remains a necessary prerequisite to

the sealing of it that it should be *in esse;* that the sealing of the blank form does not make the form a process of the court. Undoubtedly, it would be not only better practice, but, so far as the clerk is concerned, a much safer practice, for attorneys to present to the clerk for sealing a writ complete in every other particular but the seal and the clerk's signature; but such has not been the practice in this circuit for many years. It has always been customary for the clerk to deliver to any reputable attorney of the court writs in blank, duly signed and sealed, to be properly filled in with names of parties, style of action, and proper date, when necessity calls for their use. Nor can I perceive any wrong possibly resulting to the defendant from such practice. The writ simply commands the marshal to summon the defendant to appear before the court on the day in the writ designated, to answer the plaintiff. What possible difference can it make to the defendant whether the whole writ has been prepared by the clerk who has sealed it before it was actually sealed, or that it was first sealed, and then properly and fully filled up with the names of the parties and the action, and made duly returnable, by some suitor or his attorney? The only right of the defendant in the premises is to have his day in court. To obtain this, he is entitled to have due and ample notice of the commencement of any action, and of the day when he will be called upon to answer that action. Whether that notice be prepared by the clerk, or by any of his assistants, or by the suitor, or by his attorney, or partly by one and partly by the other, if it be in due form, in full compliance with the statute governing its issue, bear proper date, and be validated by the seal of the court, and its authority for its issue be certified by the clerk's signature, what more can the defendant demand? He has received all that he is entitled to, to-wit, a legal notice of the bringing of the action against him. He can ask nothing more. If this reasoning be correct, it follows that the fact, admitted in this case, of the completion of the writ by the insertion of the names of the parties, the style of action, the date of its return and of its issue, after it was sealed and signed by the clerk, cannot destroy its validity as a writ. Such practice wrongs none, and, if there be no wrong inflicted, there can be no necessity for a remedy, and, rightfully, no complaint.

It is further alleged that the writ should be quashed because it was not indorsed by the name of any attorney of this court. This is undoubtedly so, and amounts to a technical error; but I think it is clearly within the power of the court to amend the writ in this particular by permitting the substitution of the name of an attorney of this court for that which now appears upon the writ, or by admitting the attorney who did issue the writ, and who did indorse it, to practice in this court. Upon the argument an offer to comply with either of these alternatives, as the court should direct, was made by the plaintiff's counsel. In this respect I think the writ may be amended, and I do not further consider this as an objection.

Nor can I see any force in the first reason assigned to justify the setting aside the service of this writ. It is admitted that the service was made by Mr. Bower, who derived his authority, if any he had, to make such service, from a special deputation issued by the marshal to him, in

which, however, neither he nor any one else was named by the marshal as his deputy or special agent to make such service. But this fact alone will not invalidate the service, in my opinion. It is true that the practice of issuing blank deputations signed by the marshal is far from commendable, and if this question, now raised as to the validity of such proceeding, concerned a novel action by the marshal, it might well be doubted if he who is clothed with the power by the statute of designating and empowering such deputies can delegate his right to make such selections in the premises to another. But the practice, both in the state courts by the sheriffs of counties, and in this court by the various marshals, to issue such deputations in blank, has been so long continued that it would be unwise now to compel a change. It cannot be doubted that, independent of any rule of court or statute, a marshal may direct a particular ministerial act, with the performance of which he is charged, to be performed by another acting for him, and under his authority, and upon his responsibility. If Mr. Bower's name had been inserted in the deputation by the marshal before it was delivered to him, no criticism could be made upon it, or upon the act of the marshal. Clearly, the mere omission of the name of the deputy cannot destroy the deputation, for, in delivering that to Mr. Bower in blank, the marshal, in effect, authorized him, and, as well, any one else whose name Mr. Bower chose to insert in the paper, to make service of the writ. The marshal assumed the whole responsibility of the transaction. He chose to permit Mr. Bower to act in the premises. He authorized him to make service of the writ, or, in lieu thereof, to designate as his agent, and for him, any other person to make such service. His signature carried with it full authority to do the act. So far as the defendant was concerned, that signature gave sanction to everything done by the person whose name appears in the deputation. The service was not an act of the person deputized, but of the marshal, acting by and through his deputy. If aught was done by such deputy that was illegal or contrary to practice, the responsibility would rest upon the marshal. He could be compelled to answer. The service of that writ by Mr. Bower was the act of the marshal alone, and cannot be objected to. Besides, in this case, there appears to be a complete ratification by the marshal of the acts of Mr. Bower in inserting his own name in the deputation, and in serving the writ. The writ was duly returned to this court, with the formal recital of the service made. It has been on the files of this court for months. Such return, and the antecedent service made in the name of the marshal, has in no wise been denied or repudiated by him. He has, by his declining to interfere in the matter, stamped the transaction with his approval. It cannot lie in the power of the defendant to challenge the authority of the deputy making service of a writ, when such authority is conceded and affirmed by the officer having the power to bestow it.

The more serious question in this case relates to the service of the writ itself. As has been stated, it was served upon the defendant Mr. Garrett as he was entering a car in the station of the New Jersey Central Railroad Company, at Jersey City, to proceed *en route* to Baltimore. He

was at that time actually *in transitu*. His journey commenced when he stepped on board the ferry-boat of the railroad company, to be conveyed from New York city to the railroad cars awaiting him in Jersey City. He had been in the state of New Jersey but a very few minutes. He had no intention of remaining in the state longer than was necessary to pass across it in a railroad train. Is such service, made under such circumstances, a compliance with the statute? The judiciary act of 1789 provided that no civil suit should be brought before the circuit or district courts against an inhabitant of the United States, by any original process, in any other district than that whereof he was an inhabitant, or in which he should be found at the time of the service of the writ. The act of 1875 contains a similar provision. This liability of the defendant to be sued in the district where he might be found at the time of serving process was omitted in the act of 1887, as amended by the act of 1888, but he still remains liable to suit in the district of the residence of the plaintiff, as well as in his own district. The words of the act of 1887, as amended by the act of 1888, are as follows:

"No civil suit shall be brought before either of said courts against any person, by any original process or proceedings, in any other district than that whereof he is an inhabitant; but, where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

The apparent contradiction of these clauses of the act gave rise to much controversy, but the question is now no longer an open one as to the meaning. Mr. Justice FIELD said in *Wilson* v. *Telegraph Co.*, 34 Fed. Rep. 561, the concluding clause is to be read as a proviso to the general provision that no civil suit shall be brought except in the district whereof the defendant is an inhabitant. The clauses, with this construction, would then read:

"That no civil suit shall be brought before either of said courts against any person, by any original process or proceeding, in any other district than that whereof he is an inhabitant: provided, nevertheless, that where the jurisdiction is founded upon the fact that the action is between citizens of different states only such suits may be brought in the district of the residence of either the plaintiff or the defendant."

This construction has been approved by very many of the circuit courts and by the supreme court. *Fales* v. *Railroad Co.*, 32 Fed. Rep. 673; *St. Louis, etc., R. Co.* v. *Terre Haute, etc., R. Co.*, 33 Fed. Rep. 385; *Loomis* v. *Gas Co.*, Id. 353; *Swayne* v. *Insurance Co.*, 35 Fed. Rep. 1; *McCormick, etc., Co.* v. *Walthers*, 134 U. S. 41, 10 Sup. Ct. Rep. 485.

If it be true, as it is alleged in the writ itself in this case, that the plaintiff is a resident of the state of New Jersey, it must be admitted that, under this statute, he had a right to commence a suit in the circuit court for the district of New Jersey, provided the jurisdiction of the court could attach to the defendants. A federal court acquires jurisdiction over parties only by a service of process, or by their voluntary appearance to the action; and such service of process must be made within the ter-

ritorial jurisdiction of the court. Now, it must be remembered that, by the statute regulating the procedure in the courts of the United States other than in equity and admiralty cases, it is provided that the practice, pleadings, and forms and modes of proceeding in civil causes shall conform as near as may be to the practice, pleadings, forms, and modes of proceeding existing at the time in a like case in the courts of record in the state within which such circuit or district courts are held. And it has been held that this regulation applies to processes by which suits are brought, and their mode of service, (*Brownell* v. *Railroad Co.*, 18 Blatchf. 245, 3 Fed. Rep. 761; *Springer* v. *Foster*, 2 Story, 383; *Perkins* v. *Watertown*, 5 Biss. 320;) and, in compliance with this statutory regulation, this court has formally, by a rule duly entered in the minutes of the court on the 1st day of June, A. D. 1870, adopted a minute to the effect that the practice of the higher courts of this state shall be the practice to be followed in the circuit court of the United States for this district. Now the service of a writ of summons in personal actions in a court of law in the state of New Jersey is made by serving a copy of such process on the defendant in person, without regard to the length of time he has been in the state, at least two days before its return, or by leaving a copy thereof at his dwelling-house or usual place of abode at least six days before its return; and the statute further provides that when the sheriff or other officer to whom such process shall be directed has returned the same "served" or "summoned," the party shall be considered as being in court, and may be proceeded against accordingly. The only exceptions to the sufficiency of a personal service which can be alleged in the courts of New Jersey arise— *First*, when the party upon whom such process has been served has been induced to come into the state by a deception practiced upon him by the plaintiff, for the purpose of making such personal service; and, *secondly*, when such party, so served, at the time of service was in attendance from a foreign state as a witness before any judicial tribunal in this state. In such cases, service of a writ of summons is held to be invalid, and the courts will set aside the writ upon the facts being made known to it. *Williams* v. *Reed*, 29 N. J. Law, 385. As this practice of the state court prevails in this court, the service of a writ of summons issuing thereout may be made upon the defendant within the state personally, without regard to time of his presence here, provided such service is not in any wise tainted by the procurement of the presence of the defendant within the territorial limits of the state by deception or fraud, or he is not here as a witness before a court. In every other case than those excepted, personal service of a writ, made in compliance with the terms of the statute regulating it, must be held to be good. Applying this criterion to the case before the court, it is evident that the service of this writ upon Mr. Garrett, after he voluntarily entered the borders of the state of New Jersey, not in the character of a witness, and without the practice of any fraud or deception upon him by the plaintiff, or any one representing the plaintiff, to procure his presence in this state, must be held to be good. The defendant's counsel, in a very able

and acute argument, insisted that the temporary presence of the defendant within the state of New Jersey was not such a presence as was required in order that the marshal or officer deputized to serve a writ could be said "to have found him" for that purpose within the district, and he relies upon the case of *Smith* v. *Tuttle,* 5 Biss. 159. The act in force at the time that case was decided, regulating the jurisdiction of the court, was an act of September 24, 1789, which provided that no civil suit should be brought before the circuit courts against an inhabitant of the United States, by any original process, in any other district than that of which he is an inhabitant, or in which he may be found at the time of serving the writ. The defendant was a citizen and resident of Iowa, and was temporarily in the northern district of Illinois, passing through upon business. The plaintiff was a citizen of New York. To the declaration filed the defendant pleaded that he could not be sued in the state of Illinois, as he was a citizen of Iowa. To this plea a demurrer was interposed, on the ground that the statute conferred jurisdiction upon the court of any district where the defendant "might be found" at the time of the commencement of the suit. It will be seen that the court had jurisdiction so far as the matter of citizenship was concerned, because the parties were citizens of different states; but the question debated was whether the defendant could be brought into court when service of the writ was made upon him while he was merely temporarily sojourning in the state of Illinois. Judge BLODGETT, in giving the opinion of the court, said:

"This matter was called up during Judge DAVIS' visit to the state, and the authorities were examined, and Judge DAVIS, Judge DRUMMOND, and myself all came to the conclusion, in the light of the authorities, that this court has no jurisdiction over a citizen of another state who was temporarily found here long enough to be served with process; that the acts of congress conferring jurisdiction do not contemplate that the defendant shall be sued out of the state where he resides; that he has the privilege of litigating a question in the federal court between himself and a citizen of another state in the state of his own residence,—and the plea was thereupon sustained."

As this construction of the act was *quasi* antagonistic to the words of the statute, and contrary to the common-law practice, it can only be, and was, indeed, justified upon the ground of public policy, in that it was a hardship to permit a plaintiff living in one state to commence a suit against a defendant residing in another state in any district where the defendant might happen to be for the time being, and where such presence in the district was only temporary. Any other construction of the statute of 1789 would have made a defendant liable to be sued in any civil suit anywhere within the limits of the United States that he might be found. If such right was vested in the plaintiff, so as to commence a suit under such circumstances, it is very plain that he might harass and annoy the defendant in the extreme. It was undoubtedly, under the act referred to, the right of the defendant to have a suit, instituted against him in the federal courts, brought in the district of his residence, or where he might be sojourning. Any other construction would lead to great oppression. But the act of 1887 is a re

strictive act; it limits the jurisdiction of the circuit courts. The defendant is no longer liable to be sued anywhere within the United States, before any circuit court, in any district. He can only be called into one of two forums,—that of his own residence, or that of the residence of the plaintiff. No more hardship will accrue to him from being brought into the court having jurisdiction where the residence of the plaintiff is than would inure to the plaintiff if he were compelled always to seek the court of that district where the defendant resides. The plea of hardship cannot be justly interposed here. Besides, if the act giving the plaintiff the right to sue in his own district means anything at all, it must mean that a defendant, temporarily within the district of the plaintiff's residence, is liable to be sued there, provided process can be served upon him; otherwise, the plaintiff might never be enabled to sue in his own district.

The motions are denied.