## MANKIN v. BARTLEY.*
## SAME v. SAUNDERS.

(Circuit Court of Appeals, Fourth Circuit.   May 10, 1920.)

Nos. 1779, 1780.

1. **Courts ⬅➡345—Waiver of objection to jurisdiction by appearance not affected by state statute.**

A general appearance by defendant in a federal court is a waiver of objection to the jurisdiction of the court on the ground that he is a citizen and resident of another district, and such waiver is not affected by a state statute permitting the filing of pleas in abatement and bar at the same time.

2. **Trial ⬅➡2—Consolidation of causes within discretion of court.**

Consolidation for trial of two actions at law, to recover for injuries to plaintiffs caused by defendant's automobile at the same time, *held* within the discretion of the court.

3. **Negligence ⬅➡134(4)—Reckless driving of automobile.**

Evidence *held* to sustain a verdict holding defendant liable for injuries to plaintiffs caused by his automobile, which he was driving at a dangerous speed in the evening around a circular race track in fair grounds, while numerous people were crossing the track to and from amusement places within the circle.

In Error to the District Court of the United States for the Western District of Virginia, at Big Stone Gap; Henry Clay McDowell, Judge.

Actions by James Bartley and by G. C. Saunders against Speed Mankin.   Judgments for plaintiffs, and defendant brings error.   Affirmed.

S. H. Sutherland and George C. Sutherland, both of Clintwood, Va., for plaintiff in error.

Roscoe Vanover, of Pikeville, Ky. (R. H. Cooper, of Pikeville, Ky., on the brief), for defendants in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge.   The plaintiff in error will be referred to as defendant, and the defendants in error as plaintiffs; such being the relative positions the parties occupied in the court below.   In these actions process was in each case issued on March 26, 1919, returnable to the third Monday (21st day) of April, and was executed on April 10th.   Counsel, in a brief for defendant filed in the court below, said:

"Now in this case the defendant appeared at the second April rules (third Monday), and a rule was given him to plead, and at the next rules filed his pleas."

The letter of defendant's counsel to the clerk of the District Court, dated April 15, 1919, was in the following language:

"In the cases of James Bartley v. Speed Mankin and G. C. Saunders v. Speed Mankin, actions of trespass on the case, please enter our appearances for the defendant in each of these cases at first rules, and give rule for defendant to plead."

In referring to this phase of the question the learned judge of the court below said:

"On May 6th (first May rules) the defendant did file simultaneously in each case two pleas. One is a plea asserting defendant's personal exemption from suit in this district, alleging himself to be a citizen of West Virginia. The other is a plea in abatement, alleging the pendency of another action between the same parties for the same cause of action in the United States District Court for the Southern District of West Virginia."

The facts upon which these actions are based may be epitomized as follows:

In October, 1918, the Dickenson county fair was held at Clintwood, Va., on grounds specially set apart and inclosed for that purpose. Within this inclosure was a race track 25 to 30 feet wide, nearly circular, and about 1,950 feet in circumference. There was a gate at the northeast corner of the "fair grounds," where people made their entrance as well as their exit. From this entrance the visitors passed on nearly westward, to a plank fence extending around the northern portion of the race track at its outer edge, and at the northeastern portion there was an opening or gate, where the people would enter upon the race track. On the inside of this race track was a street carnival. It appears that from 700 to 1,000 people attended this street carnival each night, and of necessity, in order to reach the carnival, it was necessary for them to cross the race track to get inside of the circle where it was being held. Those attending the carnival were frequently upon this race track, going to and returning therefrom, and using it practically all the time while it was being conducted.

After this condition had existed for three or four days, defendant, who, as alleged, had attended the carnival, and had full knowledge that the circular race track was thus being used by people attending and returning from the same, while it was being conducted, and at the time when he knew of his own knowledge that people were regularly crossing the race track, began to run his automobile upon the track at the rate of 25 miles or more per hour. It is further insisted that the defendant carelessly and negligently ran against and over the plaintiffs, thereby inflicting great physical injury upon them, especially upon the plaintiff Bartley, and on account of injuries thus sustained plaintiffs seek to recover damages against defendant.

Counsel for defendant insists that these plaintiffs had full knowledge of the existing condition at the time they entered the "fair grounds," and that the dangers were open and obvious, and that therefore they contributed to their own injuries. Judgment was entered in favor of the plaintiffs in the court below, to which defendant excepted, and the cases are here on writ of error.

[1] As stated, defendant raised the question of jurisdiction in the court below, insisting among other things that his plea to the jurisdiction should be sustained, relying principally upon section 3264 of the Code of Virginia, which is in the following language:

"The defendant in any action may plead as many several matters, whether of law or fact, as he shall think necessary, and he may file pleas in bar at the same time with pleas in abatement, or within a reasonable time thereafter, but the issues on the pleas in abatement shall be first tried."

The District Court, in referring to the effect of this section, said:

"Counsel for defendant argue that because, by section 3264, Code of 1904, inconsistent pleas may be simultaneously filed without being mutually destructive, and pleas in bar may be filed at the same time with pleas in abatement, the waiver of defendant's exemption cannot be held to have here taken place. But it seems to me that the question before us is not one of practice, or of pleading, or of modes of proceeding, but is a question of federal jurisdiction, governed entirely by the federal decisions. In so far as this statute relates to mere matters of procedure, it is followed in the federal courts in this state. For instance, if there had been no question here as to the citizenship of the defendant, he could in these cases, by force of this statute, have filed his pleas in abatement because of the pendency of another action, and at the same time he could have filed pleas in bar [of not guilty] without waiving his pleas in abatement. But in respect to the question of a waiver of the defendant's alleged personal exemption from suit in this district this state statute has no effect, for the question is one of the jurisdiction of the federal court and is not controlled by the state law. In Goldey v. Morning News, 156 U. S. 518, 523, 15 Sup. Ct. 559, 561 (39 L. Ed. 517), it is said: 'The jurisdiction of the Circuit Court of the United States depends upon the acts passed by Congress pursuant to the power conferred upon it by the Constitution of the United States, and cannot be enlarged or abridged by any statute of a state.' See, also, So. Pac. Co. v. Denton, 146 U. S. 202, 209, 13 Sup. Ct. 44, 36 L. Ed. 942; Western Loan Co. v. Butte, etc., Min. Co., supra, 210 U. S. 368, 369, 28 Sup. Ct. 720, 52 L. Ed. 1101; Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 443, 30 Sup. Ct. 125, 54 L. Ed. 272. In Lehigh Valley Co. v. Yensavage, 218 Fed. 547, 550, 134 C. C. A. 275, 278, in respect to this question the court said: 'In this respect federal courts do not follow the state practice.'"

Also, in referring to Interior Construction Company v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401, the lower court said that—

"* * * is a decision exactly in point, and so far as I know it stands unshaken as the last enunciation of the Supreme Court on this exact point. I say that it is a decision in point, because the case was decided on the theory that the sureties (citizens of Indiana) would have had an exemption from a joint suit in the Indiana federal court, based on the fact that their codefendants (the principals in the bond), were citizens of Pennsylvania, if this exemption had not been waived by the general appearance made for the sureties and one of the principals prior to the filing of the plea of exemption. This case is therefore here a binding authority. It follows that, by reason of the unrestricted appearance of the defendant at the 2d April rules, the plea setting up exemption from suit in this district filed at 1st May rules was unavailing. The exemption, if it existed, had been irrevocably waived by the antecedent appearance. On this ground alone I am constrained to hold that the present motions must be overruled."

We approve this construction of the law.

The eighth assignment of error is to the effect that the court erred in overruling the demurrer to the declaration. We have carefully examined the declaration in connection with the bill of particulars, and are of opinion that the facts set forth therein were sufficient to inform the defendant as to the nature and character of the alleged acts of negligence contained in the declaration. Therefore this assignment is without merit. What we have said as to this assignment applies with equal force to assignment No. 9.

[2] It is insisted by assignment No. 10 that the court erred in consolidating these cases. It appears that both plaintiffs were run over by the defendant at the same time, and the same witnesses testified as

to what occurred. Had they been tried separately, it would have required simply a repetition of the same evidence, and we fail to see wherein defendant was prejudiced by hearing the evidence as to both at the same time; and, besides, this was largely a matter of discretion with the court below, and there is nothing to indicate that the court in the exercise of such discretion did or said anything to the prejudice of the rights of defendant.

[3] Assignments 11 and 12 relate to the refusal of the court below to direct a verdict. As we have stated, at the time these plaintiffs were injured there was a street carnival being held at a point in the "fair grounds" where it became necessary for those attending the same to cross the track, around which (the evidence shows) the defendant was running his car at a rate which, under the circumstances, was exceedingly dangerous if not to say reckless. Plaintiff Bartley, among other things, stated that there were about 500 or 600 people in attendance the night he was injured; that it was understood that before any race could be run some of the marshals were to advise the people so as to enable them to clear the track; that on this occasion no such notice was given; that he and his coplaintiff " * * * had started to the soft drink stand up there"; that the people were "circled" all around the rack track; that there may have been 40 or 50 people on or crossing the track at that time; "that the automobile was something near 8 or 10 feet of witness before he ever saw it, and that he then started to jump; that it was going fast. * * * I would say it was going something like 40 to 45 miles an hour; * * * that the defendant could have seen him on the track * * * I would say 100 yards or 150 yards. * * * That there was nothing to obstruct the driver's view, no timber, house, or anything. * * * "

The plaintiff Saunders, after testifying as to the number of people, etc., said that at the time of his injury they were crossing the track from the inside to the outside, going to get a bottle of something to drink. " * * * We were hit, standing near the fence there." When asked as to where he was hit he stated: " * * * in the back, a little bit to one side (right side), and the next I recollect after that I was in an automobile and being taken to a party's house." That he did not see the car, only had "kind of a side view of it. * * * " It appeared like he could see them running from something, and when he looked it seemed like he could almost reach the car, and he wheeled with his back "kindly" to it; hardly any time elapsed from the time he saw it until it struck him, "you could not snap your finger" twice from the time he saw it until it hit him. The plaintiffs were corroborated by others who testified in their behalf that this accident was due to the fact that defendant, in utter disregard of the safety of the public, was engaged on that occasion in racing his car around the track which, at the time from the very nature of things, was being used by pedestrians who were constantly passing to and fro across it.

Thus we have a car rushing at a high rate of speed into a group of people, without any attempt on the part of the driver to check the speed until within 10 feet of them. Under these circumstances the accident was almost inevitable. With a clear space intervening between the

driver and the group of people on a track that was well lighted, the defendant undoubtedly knew of their presence, and his failure to blow the horn or check the speed of the car tends to show that the proximate cause of the accident resulted from the careless and negligent conduct of the defendant. It is a miracle under these circumstances that the plaintiffs escaped with their lives. It is true the defendant claims that he was only going 25 miles an hour; but there was testimony, as we have stated, showing that the rate of speed was about 45 miles an hour. Even the rate at which defendant testified he was going was excessive. We think that under all the circumstances there was ample evidence to go to the jury as to the negligence of the defendant in both of these cases. Under the rule the court will never direct a verdict, when the evidence is such that reasonable men may reasonably differ as to the inference to be drawn therefrom. In the case of Columbia & P. S. R. Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405, Justice Gray, in referring to this phase of the question said:

"The question of the sufficiency of the evidence for the plaintiff to support his action cannot be considered by this court. It has repeatedly been decided that a request for a ruling that, upon the evidence introduced the plaintiff is not entitled to recover cannot be made by the defendant, as a matter of right, unless at the close of the whole evidence, and that if the defendant, at the close of the plaintiff's evidence, and without resting his own case, requests and is refused such a ruling, the refusal cannot be assigned for error. Grand Trunk Railway Co. v. Cummings, 106 U. S. 700; Accident Insurance Co. v. Crandal, 120 U. S. 527; Northern Pacific Railroad v. Mares, 123 U. S. 710; Robertson v. Perkins, 129 U. S. 233." Also the case of McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162, is to the same effect.

This rule is also announced in the case of American Locomotive Co. v. Thornton, 259 Fed. 409, 170 C. C. A. 381, decided by this court. The following Virginia cases are very much in point: Carrington v. Ficklin's Ex'rs, 32 Grat. (Va.) 670; Chesapeake & Ohio Ry. Co. v. Williams, 108 Va. 689, 62 S. E. 796; Bass v. Norfolk R. Co., 100 Va. 1, 40 S. E. 100. There are numerous other cases to the same effect. In view of the evidence, we think the ruling of the lower court on this point was eminently proper.

It is insisted by the thirteenth assignment of error that the court erred in permitting counsel for plaintiffs to argue that it was negligence on the part of the defendant not to keep a lookout for persons on this circular track, when he was speeding around, according to his own evidence, at the rate of 25 miles per hour. We do not deem it necessary to discuss this assignment, further than to say it is without merit.

By the fourteenth assignment it is contended that the court erred in permitting the introduction of an X-ray picture of James Bartley's broken leg. It appears that this picture was made while plaintiff Bartley was being treated for his injuries at a hospital. Plaintiff testified that he was exposed to the X-ray machine in two different ways, and that the next day the doctor presented him with these pictures. The pictures showed the leg as being broken. The photographs were accurate pictures of the identical place where the leg was broken. The plaintiff Bartley in his testimony identified the pictures, we think, sufficiently to admit them in evidence. In any event, the introduction of

these pictures could not have in any way been prejudicial to the rights of defendant. An exhibition of same showed that they correctly portrayed the condition of the leg, and therefore corroborate the testimony of plaintiff.

An examination of the record shows that assignments 15 and 16 are without merit.

Assignments 17, 18, and 19 relate to the instructions given by the court below. In view of the facts and circumstances, these instructions fairly present the law under the evidence.

We have also considered the court's action in regard to assignments 20, 21, 22, 23, 24, 25, 26, 27, 28 and 29, and are of opinion that the court's ruling in regard to the instructions was eminently proper. There are numerous authorities cited by counsel for defendant but they do not apply to the cases at bar. The record shows that the instant cases were tried with great care and that every opportunity was afforded defendant to make his defense; the charge being fair and impartial. The defendant, in utter disregard of the rights of others, drove his machine in a reckless and dangerous manner under the circumstances, which was the proximate cause of the injuries sustained by these plaintiffs. Under the circumstances, we think the verdict of the jury was amply warranted; that the amount of damages awarded was very reasonable.

From what we have said, it follows that the judgments of the court below should be affirmed.