## MASSACHUSETTS BONDING & INS. CO v. CONCRETE STEEL BRIDGE CO.

Circuit Court of Appeals, Fourth Circuit.
January 15, 1930.

No. 2875.

E. A. Bowers, of Elkins, W. Va. (Arthur H. Hull, of Harrisburg, Pa., on the brief), for appellant.

James M. Guiher, of Clarksburg, W. Va. (Philip P. Steptoe and Steptoe & Johnson, all of Clarksburg, W. Va., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. This is an appeal from a judgment for $17,424.82, rendered in favor of the appellee, the Concrete Steel Bridge Company, a West Virginia corporation, by the District Court of the United States for the Northern District of West Virginia, at Elkins, in an action of assumpsit, brought by appellee, who was plaintiff below, against appellant, Massachusetts Bonding & Insurance Company, who was defendant below.

In May, 1925, one W. A. Palmer, Inc., a Pennsylvania corporation, entered into a contract with the highway department of the commonwealth of Pennsylvania, whereby the former undertook to perform certain work in and about the construction of a state highway in Pike county, Pennsylvania, which work included the erection of a number of concrete bridges. The defendant bonding company became surety for the performance of the contract. The contractor entered into a subcontract with the plaintiff bridge company for a construction of the bridges included in the contract. The contractor and the subcontractor both began construction, and a large amount of work was done by each of them, extending into the late fall of the year 1925, when the contractor was ousted from the job because of its failure to comply with the contract. The defendant bonding company, in recognition of its suretyship, took over the completion of the contract.

In the spring of 1926, the bonding company entered into a separate and special contract with the plaintiff, under date of April 1, for the completion of the bridges. Following the making of the special contract with the bridge company the work progressed to completion; the plaintiff completed its bridges and the bonding company completed the remainder of the work, so far as this record shows, to the entire satisfaction to both the Pennsylvania Highway Company and the defendant.

A controversy having arisen between the bonding company and the bridge company over the sum due from the bonding company to the bridge company, the bridge company, in August, 1928, instituted this action, and the præcipe, filed by the attorneys for the plaintiff, requested the clerk to issue process returnable to September rules, 1928. By inadvertency or mistake, the clerk for the District Court of the Northern District directed the process to the marshal of the Southern District of West Virginia.

The defendant bonding company had qualified to do business in the state of West Virginia, and under the West Virginia statute the auditor of the state was attorney in fact, upon whom service could be had in suits

against foreign corporations doing business with the state. The marshal of the Southern District of West Virginia served the process upon the state auditor and made return thereof. The state auditor, as authorized by the statute, also accepted service of the process in words and language as follows:

"Service of this process accepted at my office in Charleston, state of West Virginia, on the 21st day of August, 1928, on behalf of Massachusetts Bonding & Insurance Company, a foreign corporation, which has been authorized to do business in this state, in accordance with the provisions of chapter 54 of Barnes Code of West Virginia, and which has appointed the auditor of West Virginia its attorney in fact to accept service of process and notice in this state.

"Sam T. Mallison,

"Auditor of West Virginia."

On September 3, 1928, plaintiff filed at rules its declaration and account, accompanied by a bill of particulars. On October 2, 1928, the defendant, appearing specially for the purpose, filed a plea in abatement at rules denying that the cause of action arose in the Northern District of West Virginia, and alleging that it arose in Pennsylvania, and that the District Court of the United States for the Northern District of West Virginia was for that reason without jurisdiction. On November 16, the defendant filed in court a notice for a production of certain documents craving oyer of them. On November 27th, the defendant appearing solely for the purpose, moved to quash the writ and the return. Defendant's written motion to quash made no reference whatever to the acceptance of service by the auditor. On December 7th, the court below overruled the motion to quash the summons and return, and struck out the plea of the defendant as to the jurisdiction, to which action of the court, in both instances, the defendant excepted. Thereupon trial was had and the jury returned a verdict for the plaintiff in the sum above mentioned, and the court entered judgment for the plaintiff upon the verdict, from which action of the court this appeal was taken.

Three points are raised by the bonding company: First, that the court did not have jurisdiction to try the suit because the cause of action did not arise in the district in which the suit was brought; second, that the service was bad and that the defendant was not properly brought into court; and, third, that the court below erred in its construction of the contract between the bonding company and the bridge company.

In considering the question of jurisdiction raised by defendant's plea in abatement at rules, we are confronted at the outset with the fact that the record is silent as to where the contract between the bonding company and the bridge company of April 1, 1926, was executed. It was upon this contract, and not upon the bond given by the defendant for Palmer, Inc., that the plaintiff sued. The theory of the defendant, as evidenced by the written plea in abatement, as to the jurisdiction, seems to be based at least partly upon the assumption that this was a suit on the bond given by the defendant as surety for the Palmer, Inc., which assumption is erroneous. Had it been proven that the contract of April 1, 1926, was executed in the Northern District of West Virginia upon failure to make payment as stipulated in the contract, there could be no doubt about the fact that the cause of action arose there. It is not alleged, nor is it shown, that the contract was not executed there. The cause of action for breach of contract, however, arose, not upon the execution of the contract, but upon the failure to make the payments therein provided for. As there was no stipulation in the contract as to where they should be made, the law implies that they should be made at the place of residence of the creditor. Harvey v. Parkersburg Insurance Company, 37 W. Va. 272, 16 S. E. 580; Danser v. Dorr, 72 W. Va. 430, 78 S. E. 367; Jones v. Coal Company, 84 W. Va. 245, 99 S. E. 462. And as they were not made at all, it would seem that the cause of action arose in favor of plaintiff where they should have been made. Not only is it not shown, therefore, that the contract sued on was not made in West Virginia, but it would seem, also, that the cause of action for its breach arose in that state. But irrespective of where the cause of action arose, there can be no question of the jurisdiction of the court to entertain the suit, which was the point raised by plea No. 1, for diversity of citizenship unquestionably existed and the suit was instituted in the district of residence of the plaintiff. Judicial Code § 24 (1), 28 USCA § 41 (1); Judicial Code § 51(a), 28 USCA § 112(a).

It may be contended that plea No. 1 should be construed as raising the point that jurisdiction was not obtained over the defendant by acceptance of service by the state auditor, on the ground that the cause of action did not arise within the state. We do not think that plea No. 1 can be construed to raise this point, but, even if so construed, it will not avail defendant anything. In the first place, as shown above, it does not appear that

the cause of action did not arise within the state. In the second place, we do not think that under the statute of West Virginia the authority of the auditor is limited to accepting service in cases where the cause of action so arose.

Chapter 54, § 24a of the West Virginia Code, provides as follows:

"The auditor of this state shall be, and he is hereby, constituted the attorney in fact for and on behalf of every foreign corporation doing business in this state and of every non-resident domestic corporation, with authority to accept service of process on behalf of and upon whom service of process may be made in this state for and against every such corporation. No act of such corporation appointing the auditor such attorney in fact shall be necessary."

Chapter 54c, § 20, of the West Virginia Code relating to the surety and bonding companies, provides:

"Said company shall, by power of attorney duly acknowledged and authenticated, and filed by it in the office of the auditor, appoint some person residing in the state to accept service of process and notice, in this state, for the said company; and by the same instrument shall declare its consent that service of any process or notice in this state on said attorney, or his acceptance of service indorsed thereon, shall have the same effect as if served on him in the county where the surety is given or where the suit is instituted, and shall, in all respects, have the same effect as service thereof upon the company. And thereafter such acceptance by the said attorney, or service upon him, anywhere in this state, shall be equivalent to service in the county where the suit was brought, and for all purposes, to service upon its principal."

The West Virginia courts have held that a foreign corporation may be sued upon a transitory cause of action in any county wherein the corporation is doing business, even though the cause of action involved arose outside of the state. Owen v. Appalachian Power Co., 78 W. Va. 596, 89 S. E. 262, 265. See, also, Carson v. Insurance Co., 41 W. Va. 136, 23 S. E. 552.

In the Owen Case, supra, the plaintiff, a resident of Virginia, instituted an action at law against the defendant, a Virginia corporation, in the circuit court of Mercer county, West Virginia, for personal injuries sustained by the plaintiff in the state of Virginia. As here, process was accepted upon behalf of defendant by the state auditor of West Virginia. There, as in the instant case,

the defendant filed a plea in abatement, raising the question of jurisdiction. The court held that as the pleas did not aver that the defendant was not doing business in the state of West Virginia, they were consequently bad. There the court further said:

"Defendant is a foreign, nonresident corporation doing business in this state, and, having jurisdiction of the cause of action, the court acquired jurisdiction over defendant by the auditor's acceptance of service of process, which was binding on it."

It may be noted that the West Virginia statute, with regard to foreign corporations doing business within the state, constituting the auditor of the state the attorney in fact, with authority to accept service of process, has been upheld by the Supreme Court of the United States. St. Mary's Petroleum Co. v. West Virginia, 203 U. S. 183, 27 S. Ct. 132, 51 L. Ed. 144.

The construction and effect given by the state court to a state statute of this character, or to a power of attorney executed pursuant thereto, will be followed by federal courts sitting within that jurisdiction. Pennsylvania Fire Insurance Co. v. Gold Issue Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610; Louisville Railway Co. v. Chatters, 279 U. S. 320, 49 S. Ct. 329, 73 L. Ed. 711; Maichok v. Bertha-Consumers Co. (C. C. A.) 25 F. (2d) 257; Smolik v. Philadelphia Iron Co. (D. C.) 222 F. 148; Mooney v. Buford Co. (C. C. A.) 72 F. 32.

In Smolik v. Philadelphia Iron Company, supra, Judge Learned Hand said, at page 150 of 222 F.:

"While, of course, the jurisdiction of this court over the subject-matter of suits depends altogether upon federal statutes, the question now is of personal jurisdiction, and that depends upon the interpretation of the consent actually given, an interpretation determined altogether by the intent of the state statutes. That intent being determined, there is no constitutional objection to a state's exacting a consent from foreign corporations to any jurisdiction which it may please, as a condition of doing business. Intent and power uniting in the sections in question, how is it possible to confine the provision to actions arising from business done within the state?"

And as was well said by Mr. Justice Holmes in Mitchell Furniture Co. v. Selden Breck Co., 257 U. S. 213, 42 S. Ct. 84, 85, 66 L. Ed. 201, at page 203:

"Of course, when a foreign corporation appoints one [statutory attorney], as re-

quired by statute, it takes the risk of the construction that will be put upon the statute and the scope of the agency by the state court."

See, also, Bagdon v. Philadelphia Iron Co., 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407, Ann. Cas. 1918A, 389.

The question of the jurisdiction of federal courts over foreign corporations doing business in another state has been before the Supreme Court of the United States in a number of cases. Among others, the following are of interest: Morris & Co. et al. v. Skandinavia Ins. Co., 279 U. S. 405, 49 S. Ct. 360, 73 L. Ed. 762 (in this case it was held that the court did not have the jurisdiction, but neither of the parties was a citizen or resident of the district in which the suit was brought); Louisville & Nashville R. R. Co. v. Chatters, 279 U. S. 321, 49 S. Ct. 329, 73 L. Ed. 711; Old Wayne Mutual Life Association of Indianapolis v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345; Simon v. Southern Ry. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492; Mitchell Furniture Co. v. Selden Breck Construction Co., 257 U. S. 213, 42 S. Ct. 84, 66 L. Ed. 201; Lafayette Insurance Co. v. French et al., 18 How. 404, 15 L. Ed. 451; Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569; St. Louis S. W. Ry. Co. of Texas v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486; Pennsylvania Fire Ins. Co. v. Gold Issue M. & M. Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610.

In practically all instances where the Supreme Court has held against the jurisdiction of the federal court over suits against foreign corporations doing business in the state where the suit was brought, it has been because neither party was a citizen of the state, or because the foreign corporation had not qualified to do business within that state, and thereby tacitly consented to the appointment under the law of an agent, or if doing business within the state had not qualified so to do, or because the courts of the state had given a different construction to the state statutes than that given the statute in question here by the West Virigina courts. The defendant had the right, if it so chose, not to raise this technical question as to the courts not having jurisdiction because the matter in controversy was in no way connected with the business it was doing in the state of West Virginia, and to rely solely upon the question whether the cause of action arose within the district where the suit was brought. This it did, and submitted itself to a trial upon the issue, raising only the question as to where the cause of action arose.

"If the defendant saw fit, as it did in this case, not to present the technical question affecting the plaintiff's right to sue, but to go to trial on the merits, it had manifestly the right so to do." Judge Waddill, speaking for this court in Wetzel & T. Ry. Co. v. Tennis Bros. Co., 145 F. 458, 464, 7 Ann. Cas. 426.

The action of the court below in striking out the plea as to the jurisdiction was right.

On the second point, that the writ was void and the service was bad, and that the defendant was not properly brought into court, there can be no doubt about the fact that the clerk inadvertently or erroneously directed the writ to the marshal of the Southern district of West Virginia. We are of the opinion that the writ, as it was issued, satisfied the requirements of the federal statute, with regard to form of writs.

"All writs and processes issuing from the courts of the United States shall be under the seal of the court from which they issue, and shall be signed by the clerk thereof." 28 US CA § 721.

"No federal statute requires that all process shall be directed to the marshal. The statute merely requires him to execute 'all lawful process directed to him.'" United States v. Mitchell (D. C.) 223 F. 805, 807. See, also, Jewett v. Garrett (C. C.) 47 F. 625.

Chapter 124, § 2, of the West Virginia Code provides:

"It [the process] shall be deemed valid, although not directed to any officer, or if directed to an officer, though executed by any other to whom it might lawfully have been directed."

If issued from a state court in West Virginia, therefore, the writ in question would not even be defective, much less void.

Under the Conformity Act, it is held that process emanating from federal courts in any state may follow the form prescribed for use in the state courts of said State, except in so far as such statutes may conflict with the provisions of R. S. § 911, 28 USCA § 721, quoted above. Amy v. Watertown, 130 U. S. 301, 9 S. Ct. 530, 32 L. Ed. 946; Mims v. Reid, 275 F. 177 (C. C. A. 4th Cir.); Jewett v. Garrett (C. C.) 47 F. 625; Gillum v. Stewart (C. C.) 112 F. 30; United States v. Mitchell (D. C.) 223 F. 805.

Furthermore, under the Conformity Act, the plaintiff is entitled to invoke the rules of the District Court covering the subject of

writs and process. 3 Foster's Federal Practice, § 455.

Rule No. 3, paragraph 1, promulgated by the District Court of the United States for the Northern District of West Virginia, which was in force and effect at the time the present action was instituted, provides:

"Actions at law shall be commenced and prosecuted, and process shall be issued, endorsed, made returnable, and served in the manner provided in the Code of West Virginia or from time to time, by the Acts of the Legislature of said state, except as otherwise provided in these rules or in the laws of the United States applicable thereto."

Even if the writ be regarded defective or irregular in form, as issued, the court could have granted leave to amend, instead of overruling the motion to quash the writ.

▮ R. S. § 954, 28 USCA § 777, provides:

"No summons, writ, declaration, return, process, judgment or other proceedings in civil causes, in any court of the United States, shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect, or want of form, except those which, in cases of demurrer, the party demurring specially sets down, together with his demurrer, as the cause thereof; and such court shall amend every such defect and want of form, other than those which the party demurring so expresses; and may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

And it is further provided in R. S. § 948, 28 USCA § 767:

"Any District Court may at any time, in its discretion, and upon such terms as it may deem just, allow an amendment of any process returnable to or before it, where the defect has not prejudiced, and the amendment will not injure the party against whom such process issues."

These statutes are remedial, and should be, and are, liberally construed by the federal courts. Parks v. Turner, 12 How. 39, 13 L. Ed. 883; Mims v. Reid (C. C. A.) 275 F. 177; Southern Oil Corp. v. Waggoner (C. C. A.) 276 F. 487.

And in West Virginia is found a remedial statute of like effect. Chapter 125, § 15, of the West Virginia Code provides:

"The defendant, on whom the process summoning him to answer, appears to have been served, shall not take advantage of any defect in the writ or return, or any variance in the writ from the declaration, unless the same be pleaded in abatement. And in every such case the court may permit the plaintiff to amend the writ or declaration so as to correct the variance, and permit the return to be amended, upon such terms as to it shall seem just."

The trend of modern decisions is to disregard technical objections to matters that do not work hardships upon or do injustice to litigants, and the federal statute reads as follows:

"All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." 28 USCA § 391.

This court has placed itself in line with this tendency in Great American Insurance Co. v. Johnson, 25 F.(2d) 847. Judge Parker, in the opinion, denying a rehearing in that case, ably said (27 F.[2d] 71):

"Nor are we impressed with the contention that, relying upon the error in procedure, plaintiff in error introduced no testimony. In the first place, parties have no right to place such reliance in error of procedure. Where they are given a full and fair opportunity to develop their case, they should proceed to develop it, and not sit back and take chances on the trial court having made some technical mistake."

We are, for the reason above given, and because of the authorities quoted, of the opinion that the judge below rightly overruled the motion to quash the writ, and that, even had he been wrong in so doing, because the writ could have been amended, the error would have been harmless.

▮▮ In the written motion to quash the return of service filed by attorneys for the defendant the motion is directed to the service by the marshal of the Southern district of West Virginia upon the auditor, and no mention is made of the acceptance of the service by the auditor. It is not necessary to decide the question as to whether the service by the marshal of the Southern district was, under the circumstances, good, because the au-

ditor accepted service, and we have seen from the authorities quoted above, that such acceptance has the same legal effect as the personal acceptance by the defendant bonding company, duly authorized by its officials.

Attorneys for defendant before filing the motion to quash the writ and the return, had appeared at rules and filed a plea in abatement to the jurisdiction of the court, and again appeared and invoked the authority of the court to require the production of certain documents.

"If the appearance is a general one, the fact that it is expressly limited by its terms as special does not prevent it from being general, as all appearances are presumed to be general." 2 Ruling Case Law, 328.

"Whether an appearance is general or special does not depend on the form of the pleading filed, but on its substance. If a defendant invoke the judgment of the court in any manner upon any question, except that of the power of the court to hear and decide the controversy, his appearance is general. There are cases where the defendant may make a quasi appearance for the purpose of objecting to the manner in which he is brought before the court, and in fact to show that he is not legally there at all, but if he ever appears to the merits he submits himself completely to the jurisdiction of the court and must abide the consequences. If he appears to the merits, no statement that he does not will avail him, and if he makes a defense which can only be sustained by an exercise of jurisdiction, the appearance is general, whether it is in terms limited to a special purpose or not." Dailey Motor Co. v. Reaves, 184 N. C. 260, 114 S. E. 175, 176.

"Broadly stated, any action on the part of a defendant, except to object to the jurisdiction over his person, which recognizes the case as in court, will constitute a general appearance." 4 Corpus Juris, 1333.

"There is some difference in the decisions as to when a defendant becomes so far an actor as to submit to the jurisdiction, but we are aware of none as to the proposition that when he does become an actor in a proper sense he submits." Merchants' Heat & Light Co. v. James B. Clow & Sons, 204 U. S. 286, 27 S. Ct. 285, 286, 51 L. Ed. 488.

"The interposition in a federal District Court of a special appearance to question jurisdiction over the cause of action or of the person of the defendant waives any defect because of the serving a summons of the court in an adjacent district." Budris v. Consolidation Coal Co. (D. C.) 251 F. 673.

This court has also laid down the principle along this line in accord with the general trend of decisions. See Mankin v. Bartley (C. C. A.) 266 F. 466. Montague Manufacturing Co. v. Ten Weeges (C. C. A.) 297 F. 221.

It is held in the state courts of West Virginia that by appearance in an action for any other purpose than to take advantage of defective process or service thereof a defendant waives all objections which he might otherwise have to the writ or service. State v. Coal Co., 49 W. Va. 143, 38 S. E. 539; Fulton v. Ramsey, 67 W. Va. 321, 68 S. E. 381, 140 Am. St. Rep. 969; Frank v. Zeigler, 46 W. Va. 614, 33 S. E. 761.

Even the filing of a plea in abatement at rules—which is precisely what the defendant did in the present case—is held to waive all defects in the writ and service thereof.

"Other defects in the return are also suggested. This motion was not made, however, until after the defendant had appeared by counsel, at rules, and filed its plea in abatement, for an alleged variance between the writ and declaration. Such appearance, as has many times been decided by this and other courts, constituted a waiver of defects in the service of process. Groves v. County Court, 42 W. Va. 587, 26 S. E. 460; Fulton v. Ramsey, 67 W. Va. 321, 68 S. E. 381 [140 Am. St. Rep. 969]. No error was committed therefore in overruling the motion to quash." Parfitt v. Veneer Co., 68 W. Va. 438, 69 S. E. 985, 987.

Under the circumstances found here we are of the opinion that the defendant's motion to quash the writ came too late. A number of authorities cited and relied upon by attorneys for appellant deal with the service of process by the marshal, and have no application to the acceptance by the auditor on behalf of the bonding company.

To hold that the auditor having his official residence in the Southern District of West Virginia could not accept service of process issuing from the District Court of the Northern District in a case where all other jurisdictional requirements are met would amount, in effect, to a holding that a citizen of the Northern District could bring no suit in the federal court of that district against a foreign corporation doing business in the state, because no service could be had. We do not think that such a situation has resulted from or is even contemplated by the enactment of the statutes above quoted. An interesting discussion of this question by Judge Dayton of the District Court of the Northern

District of West Virginia, will be found in Lemon v. Imperial Window Glass Co., 199 F. 927.

On the third point, the position of the defendant is that the court below erroneously construed the special contract of April 1, 1926, as giving the plaintiff a right of action against the defendant, and that the plaintiff's only remedy was an action on the bond given by the defendant for the original contractor. We think the action of the court below was right. The pertinent clauses of the special contract of April 1, 1926, between plaintiff and defendant, are as follows:

"2. The party of the first part agrees to pay over to the said party of the second part, immediately upon receipt from the state treasury all shares of the net estimates due to the party of the second part paid subsequent to the estimate of November 15, 1925.

"3. The said party of the first part hereby assumes full and complete responsibility for the carrying out of the aforesaid contract in the place and stead of W. A. Palmer, Inc. But it is expressly agreed and understood that such assumption shall be without prejudice to the rights of the party of the first part, and under no circumstances shall such assumption be construed as an acknowledgment of liability for indebtedness of W. A. Palmer, Inc., to the party of the second part, for work done and material furnished on said job prior to November 1, 1925; it being also expressly agreed and understood that this agreement shall in no wise constitute a release of the rights of the party of the second part under the contract of W. A. Palmer, Inc., and the bond of the party of the first part given to insure the faithful performance of said contract. And more particularly this agreement shall not constitute a release of the rights of the party of the second part to be paid for 1,158 cubic yards of rock excavation at the contract rate of $3.50 per cubic yard. It is also expressly agreed and understood that as to all matters between W. A. Palmer, Inc., and the party of the second part, excepting the items covered by the checks mentioned in this agreement, of which the party of the second part is entitled to receive the sum of $13,115.94, shall remain open and unadjusted, shall in no wise be affected by this agreement, and the rights of the party of the second part concerning said indebtedness shall be determined finally under the terms and provisions of the Act approved May 16, 1921, P. L. 650."

Upon a careful consideration of these two clauses, there does not seem to us to be any conflict. The defendant bonding company entered into a separate contract with the plaintiff with regard to the completion of the work, and we know of no authority that would support the position that the plaintiff had no right to sue upon this special contract. It was evidently important to the bonding company to secure the completion of the work by the plaintiff, and by procurement, possibly, of the bonding company, the contract was entered into.

Where there is any ambiguity the courts have universally held that the condition surrounding the parties at the time of the making of the contract may be considered. Newport News Shipbuilding & Dry Dock Co. v. United States, decided by this court July 1, 1929, 34 F.(2d) 100, and authorities there cited.

Under the special contract of April 1, 1926, the defendant entered into certain obligations, and this suit is to enforce those obligations. No claim against the defendant, solely by reason of the fact that it was surety for the original contractor, is included in this action. We think the construction of the contract, given by the court below, not only the right one, but do not see how any other construction could be given.

If this were a suit on the bond given to secure the performance of the original contract it would be premature and would have to be brought in Pennsylvania under the Pennsylvania statute, but it is a suit on a special and independent contract entered into between the parties, a contract upon which the plaintiff clearly had a right to sue. Any other construction of the contract sued on would be harsh and repugnant, and harsh and repugnant interpretations of written instruments are not looked upon with favor by the court.

There was no reversible error in the court below and the judgment is accordingly affirmed.